IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| FERNANDO MORALES-PENA, SR., | Civ. No. 1:16-cv-00012-MC |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| GALE McMAHON; KLAMATH COUNTY ANIMAL CONTROL; KLAMATH HUMANE SOCIETY; CITY OF KLAMATH FALLS POLICE DEPARTMENT, | |
| Defendants | |
| FERNANDO MORALES, JR., | Civ. No. 1:16-cv-00013-MC |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| GALE McMAHON; KLAMATH COUNTY ANIMAL CONTROL; KLAMATH HUMANE SOCIETY; CITY OF KLAMATH FALLS POLICE DEPARTMENT, | |
| Defendants | |

McSHANE, District Judge.

This matter comes before the Court on Defendants' Motions for Summary in Civil Case Nos. 1:16-cv-00012-MC and 1:16-cv-00013-MC. These cases are essentially identical. They share the same Defendants, the same set of facts, common questions of law, and the parties are represented by the same counsel in both cases. Accordingly, the Court has determined that these cases will be most efficiently resolved on a consolidated basis.

The Court heard oral argument on August 16, 2018, at which time the Court GRANTED the motions for summary judgment. This Opinion and Order is to memorialize those rulings.

**BACKGROUND**

Plaintiffs in these consolidated cases are Fernando Morales-Pena, Sr., and his son Fernando Morales, Jr. Plaintiffs lived together in the City of Klamath Falls in Klamath County, Oregon.

Defendant Klamath County Animal Control ("KCAC") is a part of the Klamath County Sheriff's Office and enforces animal control laws. Klamath Defs. Ans. ECF No. 17. Defendant Gale McMahon ("McMahon") is an Assistant County Code Officer for Klamath County and a Special Deputy employed by KCAC. *Id.*; Warren Decl. Ex. 6, at 6. ECF No. 22. Defendant City of Klamath Falls Police Department ("KFPD") is the municipal police department for the City of Klamath Falls, Oregon.[1] Klamath Defs. Ans. Collectively, the Court will refer to these public Defendants as the "Klamath Defendants."

Defendant Klamath Humane Society ("KHS") is a non-profit corporation operating in Klamath County, Oregon. KHS Ans. ECF No. 15. KHS is not a governmental entity and has no ability to set municipal, county, or state policy. Barks Decl. ECF No. 24. KHS has a contractual relationship with the Klamath County government, under which KHS agrees to house and care for animals seized and taken into custody by KCAC. *Id.*

### I. The Investigation and Search

On April 3, 2015, Katerina Sekavec contacted the police to report that she suspected Morales Jr. was engaged in cockfighting based on videos Morales Jr. had posted on Facebook.

---

[1] Plaintiffs' First Amended Complaints, ECF No. 14, incorrectly identify KFPD as a subdivision of the Klamath County Sheriff's Office. "The City of Klamath Falls Police Department is not a Division of Klamath County." Bergstrom Decl. ECF No. 20.

Bergstrom Decl. ECF No. 20. KFPD Officer Kiley Bergstrom was assigned to investigate Sekavec's allegations. *Id*.

Sekavec showed Bergstrom a series of three videos that Morales Jr. had posted on his Facebook account. Bergstrom Decl. The videos depicted roosters fighting and Morales Jr. was visible in at least one of the videos. *Id.* Sekavec also showed Bergstrom a Facebook text message conversation in which Sekavec confronted Morales Jr. and accused him of illegal cockfighting. *Id.* Morales Jr. replied that the videos had been filmed in Mexico, after which Morales Jr. deleted Sekavec from his Facebook friend list. *Id.* Sekavec told Bergstrom that she did not believe that the videos had been filmed in Mexico because she recognized the Plaintiffs' residence in Klamath Falls in the background of one of the videos. *Id.*

Bergstrom viewed the publically accessible portions of Morales Jr.'s Facebook profile. From those portions of the Facebook page, Bergstrom found pictures of Morales Jr. posing with roosters at his residence in Klamath Falls. Bergstrom Decl. Bergstrom also noted that Morales Jr. had "liked" the Facebook pages of a number of cockfighting groups. *Id.*

Bergstrom and KFPD Officer Kameron Gordon then went to Plaintiffs' neighborhood. Bergstrom stood on a neighboring property with a view of Plaintiffs' residence and confirmed that it was Plaintiffs' house in the Facebook videos. Berstrom Decl. Ex. 1, at 9-10. Bergstrom could also see chicken coops in Plaintiffs' yard and could hear roosters crowing. *Id.* Gordon interviewed Plaintiffs' neighbors, who reported that they could hear roosters in Plaintiffs' yard. *Id.* at 10.

Based on the results of her investigation, Bergstrom sought and received a search warrant for both Plaintiffs' residence and Morales Jr.'s Facebook profile to search for evidence of illegal cockfighting. Bergstrom Decl. Ex. 3; Duckler Decl. Ex. 1. ECF No. 26.

On April 4, 2015, Bergstrom executed the search warrant at Plaintiffs' residence. Bergstrom Decl. Ex. 1, at 10. A number of other KFPD officers, KCSO deputies, KCAC Special Deputy McMahon, and Klamath County Deputy District Attorney Sharon Forster also participated in the search. *Id.* Prior to the execution of the search warrant, McMahon was not involved in the investigation, nor was he consulted in Bergstrom's search warrant application. McMahon Decl. ECF No. 21. Plaintiffs were both present when the warrant was executed. Bergstrom Decl. Ex. 1, at 10.

During the search, officers seized a stuffed rooster, raffle paperwork, rooster boxing gloves, wingbands, and rooster medication. Bergstrom Decl. Ex. 1, at 6-8. Most notably, the officers discovered a set of ten knives known as "rooster gaffs," in Morales Sr.'s dresser. *Id.* at 8. Metal gaff blades are attached to roosters for use in cockfighting. *Id.* at 11, 15.

The officers also seized twenty-eight roosters from Plaintiffs' home. Bergstrom Decl. Ex. 1, at 12. McMahon reported that most of the roosters were missing their waddles and combs. *Id.* at 15. Morales Jr. told police that one of the roosters had a broken beak "from getting in a fight with another rooster that was tied up." *Id.*

Plaintiffs denied that they were engaged in breeding, raising, or training roosters for cockfighting. Plaintiffs claimed they raised the roosters only for competitive poultry shows and for sale to other individuals engaged in showing roosters. Bergstrom Decl. Ex. 1, at 14. During his interrogation, Morales Jr. told the officers that the gaffs were mementos and that Plaintiffs never put the gaffs on their roosters. *Id.* at 13. When questioned about the Facebook videos, Morales Jr. told officers that he "has the roosters fight so they can relieve stress." *Id.* At McMahon's request, Bergstrom presented Plaintiffs with an animal surrender form, which they

refused to sign. *Id.* at 15. Plaintiffs were taken into custody and lodged at the Klamath County Jail on charges of illegal cockfighting. *Id.*

McMahon called KHS to take custody of the seized birds pursuant to its contract with the county government. Barks Decl. KHS president Charlotte Barks and a KHS volunteer arrived at Plaintiffs' residence and transported the roosters to a KHS facility. *Id.* Prior to taking custody of the birds, KHS had no involvement in the investigation, nor was any KHS employee aware of Plaintiffs' rooster breeding operation. *Id.*

## II.    Criminal Prosecution and Forfeiture Proceedings

On April 9, 2015, a Klamath County grand jury issued indictments against Plaintiffs. Warren Decl. Ex. 3, 15-20 (Indictment of Morales Jr.); Ex. 4, at 14-19 (Indictment of Morales Sr.). ECF No. 22-1. The indictments charged each Plaintiff with twenty-nine counts of felony Cockfighting in violation of ORS 167.428. Plaintiffs pleaded "not guilty" to the charges.

The first count of each indictment alleged that Plaintiffs "did unlawfully and knowingly possess gaffs, slashers or other sharp implements designed for attachments to a fighting bird with the [i]ntent that the gaff, slasher or other sharp implement be used in cockfighting[.]" Warren Decl. Ex. 3, at 15; Ex. 4, at 14. The remaining twenty-eight counts alleged that Plaintiffs "did unlawfully and knowingly own, possess, keep, rear, train, sell, advertise or otherwise offer to sell a fighting bird[.]" Warren Decl. Ex. 3, at 15-20; Ex. 4 at 14-19. The indictments were sought by the Klamath County District Attorney's Office and the only witnesses called to testify before the grand jury were KFPD Officers Bergstrom and Gordon. *Id.* McMahon was not involved in the charging decisions, nor was he called to testify before the grand jury. McMahon Decl. Similarly, no employee of KHS was involved in the charging decision and no KHS employee was called to testify before the grand jury. Barks Decl.

On May 13, 2015, the Klamath County District Attorney filed motions for forfeiture of the seized and impounded roosters pursuant to ORS 167.347. Warren Decl. Ex. 3, at 23-26; Ex. 4, at 22-25. The motions were signed and submitted by Deputy District Attorney Forster. *Id.*

On May 22, 2015, a hearing was held on the state's forfeiture motion before a Klamath County Circuit Court judge. Warren Decl. Ex. 6. Plaintiffs appeared at the hearing and were each represented by counsel. Warren Decl. Ex. 6, at 1; Burgott Decl. Ex. 2, at 10. ECF No. 25. No KHS employee appeared at the hearing, but Barks submitted an affidavit on behalf of KHS describing the expenses associated with the care of the impounded roosters. Barks Decl.; Warren Decl. Ex. 6, at 2. The judge accepted KHS's affidavit for the purposes of expenses and "[n]ot for the underlying *prima facie* facts." Warren Decl. Ex. 6, at 2.

McMahon was called to testify on behalf of KCAC at the forfeiture hearing. Warren Decl. Ex. 6, at 1. McMahon testified about how the roosters were housed at Plaintiffs' house, including the presence of rooster exercise equipment, "fighting muffs," attachable gaff blades, and medical supplements. Warren Decl. Ex. 6, at 8-9, 11-12. McMahon testified that the seized birds were Madigan Charlets and that the breed was well-known for use in cockfighting. Warren Decl. Ex. 6, at 9. McMahon had observed that the roosters' combs and wattles had been trimmed and their spurs had been "dubbed" or trimmed to allow for the attachment of gaff blades and testified that such physical alterations were consistent with the training of fighting birds. Warren Decl. Ex. 6, at 12. McMahon testified that the birds behaved aggressively and that he believed the roosters had been trained to respond aggressively. Warren Decl. Ex. 6, at 9-11. Mahon was cross-examined by Plaintiffs' counsel. Warren Decl. Ex. 6, at 16-21. Although Plaintiffs were present at the forfeiture hearing, they opted not to testify. Burgott Decl. Ex. 2, at 9.

The court heard argument from both the state and Plaintiffs' counsel before granting the state's motions to forfeit the impounded birds.[2] Warren Decl. Ex. 4, at 26; Ex. 6, at 21-25. In doing so, the court specifically found probable cause to conclude that the birds had been used in cockfighting. Warren Decl. Ex. 6, at 27. The court also agreed to defer entering the order of forfeiture for a few days in order to permit Plaintiffs to file a mandamus petition with the Oregon Supreme Court. *Id.*, at 27-28. It does not appear that any mandamus petition was ever filed and, in late June 2015, the Klamath County District Attorney's Office notified KHS that the roosters had been forfeited and were to be destroyed. Barks Decl. Pursuant to that order, KHS arranged for all of the impounded roosters to be euthanized.[3] *Id.*

On September 7, 2017, the state dismissed the charges against Plaintiffs and on September 8, 2017, the state court entered general judgments of dismissal. Warren Decl. Ex. 3, at 7; Ex. 4, at 6.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one . . . . The non-moving party must do more than show there is

---

[2] The original orders of forfeiture contained a clerical error indicating that they were granting "Motions to Continue" rather than motions to forfeit. Warren Decl. Ex. 4, at 26. This clerical error was subsequently corrected by Orders for Amendment *nunc pro tunc*. Warren Decl. Ex. 3, at 28; Ex. 4, at 27.
[3] One of the roosters was found dead on May 25, 2015. Barks Decl. The other twenty-seven birds were euthanized in June 2015. *Id.*

some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citations omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the non-moving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not sufficient to preclude the grant of summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). When the non-moving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary[.]" *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

Plaintiffs bring an undifferentiated federal constitutional claim, or perhaps claims, under 42 U.S.C. § 1983, as well as a state law claim for malicious prosecution. The Klamath Defendants and KHS have moved separately for summary judgment.

A consistent problem with Plaintiffs' First Amended Complaints ("FACs") is that they do not clearly allege which Defendant undertook the challenged acts. For example, the FACs allege

that, during the police interrogation, "defendants" threatened Plaintiffs with seizure of their dog unless they admitted to cockfighting. These allegations do not survive even the most superficial examination of the facts: Plaintiffs were questioned by KFPD Officer Bergstrom, who is not a party to this action, and there is no evidence that any employee of KHS ever questioned Plaintiffs.[4] Similarly, the uncontested facts show that the extent of KHS's involvement in Plaintiffs' criminal case was taking custody of the impounded roosters, submitting an affidavit describing the cost of their care in the forfeiture hearing, and then euthanizing the birds pursuant to a court order. Nevertheless, KHS is swept up in Plaintiffs' broad brush, kitchen-sink allegations concerning the "defendants'" investigation and prosecution of Plaintiffs. Such sloppy pleading falls well below the standards expected of attorneys in federal practice and verges on being frivolous.

## I.  Federal Claim(s)

Plaintiffs' federal claims appear to allege violation of Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

The precise nature of Plaintiffs' federal claim is something of a moving target. It appears that Plaintiffs challenge the forfeiture and subsequent destruction of the seized roosters. At oral argument, Plaintiffs conceded that they cannot sustain their claims under the Fourth and Fifth

---

[4] McMahon is the only individual Defendant in this case. At the forfeiture hearing, McMahon testified on cross examination that he never spoke to Plaintiffs on the day of the seizure. Warren Decl. Ex. 6, at 16.

Amendments and so the Court confines its analysis to Plaintiffs' due process claim under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend XIV, § 1. "Procedural due process rules are meant to protect persons not from deprivation, but from the mistaken deprivation or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). The Supreme Court has held that a state official's negligent or even intentional deprivation of property does not violate procedural due process rights if the state provides adequate post-deprivation remedies. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

In terms of the sufficiency of the process afforded, "[t]he base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Brewster*, 149 F.3d at 984 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether the process afforded was adequate, courts weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

With respect to the first factor, Plaintiffs had an undoubted property interest in the roosters, both in monetary terms and in terms of their possessory interest as animal owners. *See Recchia v. City of Los Angeles*, 889 F.3d 553, 561-62 (9th Cir. 2018).

As to the second and third factors, Plaintiffs suggest a series of alternative statutory procedures the state might have employed, such as placing liens on the roosters and then foreclosing the liens. The fundamental problem with this argument is that the forfeiture proceeding was initiated by the Klamath County District Attorney's Office, rather than by any of the named Defendants. The District Attorney's Office made the election to pursue forfeiture and selected ORS 167.347 as the procedural vehicle by which it would seek forfeiture. There is no evidence that any Defendant had control or input concerning the District Attorney's decision to pursue forfeiture.

In *Recchia*, the court held that "the relevant inquiry is not whether [the plaintiff] should have been [afforded a hearing] in this particular case, but whether the statutory procedure itself is capable of affording due process." *Recchia*, 889 F.3d at 561 (internal quotation marks and citation omitted). The Court therefore turns to the procedure used in this particular case.

Under Oregon law, if there is probable cause to believe that an animal is being subjected to a violation of an enumerated animal cruelty statute, including ORS 167.428, "a peace officer, after obtaining a search warrant or in any other manner authorized by law, may enter the premises . . . and may impound the animal." ORS 137.345(2). Pursuant to that statute, Bergstrom sought a search warrant for Plaintiffs' residence and, with the assistance of McMahon, seized and impounded the roosters. Once the roosters had been impounded, the Klamath County District Attorney sought an order of forfeiture pursuant to ORS 167.347, which requires a hearing within 14 days of the petition. In an ORS 167.347 hearing, the petitioner bears the burden of establishing

probable cause to believe that the animals in question were subjected to a violation of an animal cruelty statute, including Cockfighting under ORS 167.428. ORS 167.347(3). "The defendant or any other claimant shall have an opportunity to be heard before the court makes its final finding." *Id.* If the court finds that probable cause exists, it must order the immediate forfeiture of the animal unless the defendant or another claimant posts a bond or deposit within 72 hours of the hearing. *Id.* The amount of the bond is to be set by the court in an amount sufficient to repay all reasonable costs incurred and anticipated in caring for the animal from the date of its initial impoundment to the date of trial. *Id.*

The provision of an adversarial evidentiary hearing before an impartial decision maker is the essence of due process and the record demonstrates that Plaintiffs received the full benefit of those procedures in this case. An evidentiary hearing was held before a Klamath County Circuit Court judge, at which the state bore the burdens of production and persuasion. Plaintiffs were present and represented by counsel. Plaintiffs had the opportunity to testify, although they elected not to exercise it. The state presented evidence and called McMahon to testify as a witness, subject to cross examination by Plaintiffs. At the conclusion of the hearing, the judge heard argument from both sides before he made an independent determination that there was probable cause to conclude that the roosters were "fighting birds" within the meaning of ORS 167.428 and ordered their forfeiture.

Plaintiffs inappropriately attempt to make this case about whether the judge's forfeiture determination was factually correct, but such an inquiry is foreclosed by principles of preclusion. Consistent with *Recchia*, the central question in this case is not whether the state court judge was correct in finding that Plaintiffs' roosters were subject to forfeiture, but rather whether the statutory procedures laid out in ORS 167.347 were capable of providing due process.

There is no principled basis for concluding that the procedures described ORS 167.347 are incapable of providing due process. Plaintiffs' federal due process claims therefore fail. Plaintiffs were plainly aggrieved by the state court's decision, but they could have pursued appellate review. At the request of Plaintiffs' counsel, the state court agreed to delay imposition of the forfeiture order to allow them the time to file a mandamus petition with the Oregon Supreme Court, but no such petition was ever filed. Plaintiffs elected not to seek review by the Oregon appellate courts and they may not seek a factual review of the state court's determination by filing a federal civil rights action.

Although Plaintiffs devote a considerable portion of their briefing to arguing that KCAC and KFPD can be held liable under a *Monell* theory of municipal liability,[5] based on the unsupported assertion that McMahon was the final policymaker for those entities, the Court has determined that it is not necessary to reach that issue. In order to establish municipal liability under *Monell*, Plaintiffs must first establish that there was a constitutional violation. As discussed above, Plaintiffs have failed to establish a violation of their due process rights and so their federal claims fail with respect to the Klamath Defendants.

With respect to KHS, the defects in Plaintiffs' federal claims are even more glaring. "In order for a private individual to be liable for § 1983 violation when a state actor commits the challenged conduct, the plaintiff must establish that the private individual was the proximate cause of the violations." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). Plaintiffs have failed to make such a showing here. KHS's involvement was limited to housing and caring for the birds, pursuant to a contract with Klamath County; submitting an affidavit attesting to the cost of housing

---

[5] Under *Monell*, municipal liability for an alleged constitutional violation by an employee is allowed only "when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

the birds as part of the ORS 167.347 forfeiture hearing; and, finally, euthanizing the birds after they were forfeited. There is no evidence that KHS had any involvement whatsoever in the District Attorney's decision to pursue forfeiture and the state court judge expressly declined to consider the KHS affidavit as part of the *prima facie* case for forfeiture. There is no evidence that KHS, as a private entity, has any power to set official policy concerning forfeiture procedures. When questioned at oral argument, counsel for Plaintiffs was unable to articulate any basis for § 1983 liability for KHS, beyond its willingness to submit an affidavit of costs when asked to do so by the District Attorney. Upon review of the pleadings, the record, and the briefing, the Court concludes that Plaintiffs' federal claim against KHS lacks an arguable basis in law or fact.

For the reasons set forth above, Defendants' motions for summary judgment are GRANTED with respect to Plaintiffs' federal claims.

## II. Malicious Prosecution

In addition to their federal claims, Plaintiffs also bring claims for malicious prosecution under Oregon law. The elements of a malicious prosecution claim are: (1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution. *Blandino v. Fischel*, 179 Or. App. 185, 190-91 (2002) (internal quotation marks and citation omitted).

There is no dispute that Plaintiffs were charged with felony Cockfighting and that the charges against them were ultimately dropped. There is no evidence, however, that the charges were brought by or at the insistence of McMahon, KCAC, or KHS. Based on this record, it appears

that those Defendants were only tangentially involved in the investigation and prosecution of Plaintiffs.

The initial investigation and search warrant application were undertaken by non-party KFPD Officer Bergstrom. The charging decisions were made by the Klamath County District Attorney's Office. On this record, it appears that the charging decisions were made based on the prosecutor's personal knowledge of the facts of the case. Deputy District Attorney Sharon Forster participated in the execution of the search warrant and made the initial charging decisions. *See* Bergstrom Decl. Ex. 1, at 10 (listing Forster as one of the participants in the execution of the search warrant); Warren Decl. Ex. 3, at 14; Ex. 4, at 13 (Criminal informations against Plaintiffs signed by Forster); Ex. 3, at 26; Ex. 4, at 25 (Forfeiture motions signed by Forster). Non-party KFPD Officers Bergstrom and Gordon were the only witnesses called to testify before the grand jury. Warren Decl. Ex. 3, at 20; Ex. 4, at 19.

A malicious prosecution claim also requires a lack of probable cause. "In the context of a malicious prosecution claim, 'probable cause' refers to the subjective and objectively reasonable belief that the defendant committed a crime." *Blandino*, 179 Or. App. at 191. The existence of probable cause is a "complete defense" to a malicious prosecution claim. *Miller v. Columbia Cty.*, 282 Or. App. 348, 360 (2016). The existence of probable cause is a question of law for the court to resolve when there is no dispute as to the facts or circumstances underlying the question of probable cause. *Id.* at 355-56.

As noted, Plaintiffs were each charged with twenty-nine counts of felony Cockfighting in violation of ORS 167.428. The statute contains several alternative formulations of the offense, only two of which, ORS 167.428(1)(a) and (e), are relevant for purposes of this case. Under those provisions, a person commits the crime of Cockfighting if the person knowingly:

(a) Owns, possesses, keeps, rears, trains, buys, sells or advertises or otherwise offers to sell a fighting bird.

* * *

(e) Manufactures, buys, sells, barters, exchanges, possesses, advertises or otherwise offers to sell a gaff, slasher or other sharp implement designed for attachment to a fighting bird with the intent that the gaff, slasher or other sharp implement be used in cockfighting.

ORS 167.428(1)(a), (e).

For the purposes of ORS 167.428, a "cockfight" is a "fight between two or more birds that is arranged by a person and that has the purpose or probable result of one bird inflicting injury to another bird." ORS 167.426(1). A "fighting bird" is "a bird that is intentionally reared or trained for use in, or that is actually used in, a cockfight," and a "gaff" is "an artificial steel spur designed for attachment to the leg of a fighting bird in replacement of the bird's natural spurs." ORS 167.426(3), (4).

The Court has reviewed the record, including the transcripts of the forfeiture hearing, and is left with no doubt that the investigation and prosecution of Plaintiffs was supported by probable cause. The record contains no less than three contemporaneous findings of probable cause with respect to the allegation of cockfighting: (1) a state court judge found probable cause to issue a search warrant for Plaintiffs' residence based on Bergstrom's affidavit; (2) a grand jury found probable cause to issue indictments against Plaintiffs; and (3) a second state court judge held an evidentiary hearing and found probable cause to grant the state's motion to forfeit the roosters.

With respect to the investigation, Bergstrom reviewed video and Facebook evidence suggesting that Morales Jr. was involved in cockfighting and raising fighting birds. She visited Plaintiffs' neighborhood, verified that the videos had been filmed at Plaintiffs' home, and confirmed the presence of a substantial number of roosters at the property. Although the Plaintiffs argue that Bergstrom should have conducted further investigation, that argument has been

expressly rejected by the Oregon Court of Appeals. For purposes of probable cause, "[a]n officer is not required—through further investigation or otherwise—to eliminate all possible lawful explanations for conduct that reasonably appears to violate the law." *Miller*, 282 Or. App. at 358 (internal quotation marks and citation omitted). When an officer "is aware of facts that, on their face, constitute a crime, the potential existence of a defense or exemption is not relevant" to the probable cause analysis. *Id.*

Probable cause persisted through the execution of the search warrant. The fruits of the search were consistent with the breeding, raising, and training of fighting birds. In addition to twenty-eight roosters, police found exercise equipment, medical supplements, boxing muffs, and a set of ten gaff blades in Morales Sr.'s dresser. Although Plaintiffs offered innocent explanations for the seized items, characterizing the Facebook videos as "just sparring," or the gaff blades as mementos, those explanations strike the Court as far-fetched. Certainly, the explanations are not enough to defeat probable cause. *See Miller*, 282 Or. App. at 359 ("[T]o the extent that an innocent explanation is unlikely or a more remote possibility, probable cause is more readily established.") (quoting *State v. Foster*, 350 Or. 161, 173 (2011)).

With respect to the forfeiture proceeding, the state court judge heard McMahon's testimony, complete with cross-examination by Plaintiffs' criminal defense attorneys. McMahon testified about the birds' clipped wattles, combs, and spurs, as well as the suspected purpose of the exercise equipment found at Plaintiffs' home. McMahon also testified about his research into cockfighting and his experience with cockfighting investigations. Considering the record, argument, and testimony, the judge determined that there was probable cause to believe that the seized roosters were illegal fighting birds and granted the state's motion to forfeit. On this record, the Court finds no reason to dispute that determination.

On this record, the Court concludes that the prosecution of Plaintiffs was supported at every stage by probable cause. As probable cause is a complete defense to a claim of malicious prosecution under Oregon law, Defendants' Motions for Summary Judgment are GRANTED with respect to Plaintiffs' claims for malicious prosecution.

## CONCLUSION

Defendants' Motions for Summary Judgment, ECF Nos. 19 and 23 in 1:16-cv-00012-MC and 1:16-cv-00013-MC, are GRANTED. Final judgment shall be entered for Defendants.

It is so ORDERED and DATED this _____30th_____ day of November, 2018.

                                                        s/Michael J. McShane
                                                       Hon. Michael McShane
                                                       United States District Judge